## POTTER v. POTTER.

In a suit for permanent and temporary alimony against a husband, an order was passed requiring him to pay to the wife $20 per month as temporary alimony for herself and minor children. He failed to pay such amount for about two months, and a rule was taken against him, requiring him to show cause why he should not be attached for contempt. He showed for cause his pecuniary inability to make the payments, and also alleged that the original order was improvidently granted, and prayed that it be modified. On the hearing the defendant showed by evidence that his pecuniary condition, his earnings, and his earning capacity were such that he was unable to make the payments required by the order allowing temporary alimony. The plaintiff introduced no evidence in rebuttal. The court ordered that the defendant should within ten days pay the sum of $80, the amount of temporary alimony which had then accrued under the former order, or in default thereof should be committed to jail; and also continued the former order of force. *Held,* that this was error. Under the uncontradicted evidence, the court should have modified the former order.

APRIL 12, 1916.

Attachment for contempt. Before Judge Hardeman. Screven superior court. August 6, 1915.

On February 23, 1915, Mrs. Georgia Elizabeth Potter brought an action against her husband, Albert L. Potter, for permanent and temporary alimony and counsel fees, alleging, that they were living in a state of separation brought about by the cruel treatment of her husband toward her; that there were five children of the marriage, who were living with her, and whose custody she desired; and that she had no means of support, and was being supported by her sister. The defendant denied the charges of drunkenness, cruelty, and the like, made against him, or that his wife had been faithful, kind, and affectionate, as alleged by her; and alleged that she had deserted him without cause, and had made false and slanderous charges against him, causing social ostracism for both of them; that she neglected her children, and was not a proper person to have the custody of them; and that he provided for them all that his means would allow, and if they suffered for any necessaries, it was the fault of the plaintiff, and not of him.

The application for temporary alimony and attorney's fees was heard by the judge of another circuit, and he awarded to the plaintiff $20 per month as temporary alimony for herself and children, and awarded the custody of the children to her. This order

was signed on April 26, 1915, and provided that the first payment should be made on May first thereafter. On June 24 the plaintiff applied to the judge of the circuit in which the action was pending, for an attachment for contempt against the defendant, alleging that he had failed to pay the instalments of alimony due. A rule nisi was issued and served. The defendant admitted that he had not paid the instalments of alimony, but alleged that this was due to his inability to do so. He further alleged, that the order previously passed was contrary to the evidence and the principles of justice and equity, and contrary to the weight of the evidence; that the plaintiff was not entitled to recover alimony; that the defendant and not the plaintiff was entitled to the custody of the children; that the plaintiff was not fitted to have their care; that the plaintiff's wilful and unwarranted desertion of him had caused him such unnecessary expense as to render him unable to contribute a sufficient amount of his earnings to the support of his children; and that the former order was erroneous, and should be revised by the court, and the rule absolute in the contempt proceeding should be denied. He prayed that the court review the evidence in the case and revise the former order.

Upon the hearing the plaintiff introduced no evidence. The defendant introduced in substance the following evidence: A witness testified by affidavit that he was president of a bank in the county where the action was pending, having the largest capitalization of any bank in that county; that the defendant had been a patron of the bank since its establishment; that he had loaned to the defendant, several times during each year of its existence, sums of money varying from $50 to larger sums; that the defendant was still a patron and depositor in the bank, and the bank still loaned him money when it was possible to do so; but that it was not now in position to do this, having "no loanable funds at this time for its patrons." The same witness testified that he was president of a mercantile company at the place where the suit was pending; and that the company had, whenever so requested, advanced to the defendant groceries, clothing, and other merchandise.

The clerk of the superior court testified in substance as follows: The defendant has been in the employment of the witness, as a deputy clerk, since January, 1903, and is still so, on a fee basis.

The office does now and has not for some time furnished employment for the witness for the greater part of the time. During the season from January to July 10, 1915, he paid to the defendant less than $12 per month for his entire services as deputy or in any other capacity. Witness is a merchant, and at various times, whenever so requested, has advanced to the defendant goods of various kinds; he has also advanced to him money when so requested, but, on account of the very stringent condition of finances, he is now unable to advance cash to the defendant. Witness knows that defendant has had very little other employment for some time and no source other than his labor from which to obtain money.

The defendant testified by affidavit in substance as follows: His failure to comply with the order referred to in the rule was due to his absolute inability to do so. He has a house rented for the year, and has given his notes therefor, at the rate of ten dollars per month. This was rented for the plaintiff and the children. His own board costs him not less than $20 per month. He has not, at any time since the plaintiff deserted him, earned more than $35 per month; and during the months of May, June, and July 1915, he has earned less than $20 per month. He has no property except a few personal effects of little value, and for that reason can not offer security for a loan, or convert anything of value into cash, to enable him to comply with the order to pay temporary alimony. He has formerly been able, at times, with the personal indorsement of friends, to secure from the bank and the clerk of the superior court small loans to enable him to "tide over" a dull season. He can not now do this, because they are unwilling or unable to make loans to him. He is unable to obtain money from any other source. He has no desire to evade or shirk the responsibility of supporting his and the plaintiff's children; and when they are with him, or if they should be with him now, he could, with his meager earnings, together with advances of merchandise that he has always been able to obtain, and is now able to obtain, support them comfortably, supplying them with the necessaries of life. They could, were they with him, live as cheaply as he is now living, for the reason that the manner in which he is forced to live, on account of the plaintiff's desertion of him, makes the expense of his support alone almost

as much as for himself and the plaintiff and the children. The plaintiff deserted his bed without cause for more than three ·years prior to the commencement of her action for alimony. She is in every way unfit for the raising of the children, and the defendant should have the custody of them.

The court ordered the defendant, within ten days, to pay all alimony due under the prior order, amounting to $80, and directed that, upon failure to comply with this order, he should be adjudged in contempt of court and be imprisoned until he should comply. It was further ordered that the judgment theretofore rendered on April 26, requiring the defendant to pay $20 per month as temporary alimony, should be continued of force until the further order of the court. The defendant excepted.

The evidence introduced on the hearing of the application for temporary alimony is contained in the bill of exceptions, and it is inferable that it was considered by the court in connection with the application to modify the order then granted, and to discharge the rule in contempt. So far as it need be reported, the evidence introduced on the former hearing was as follows: The plaintiff testified, that the defendant had been cruel to her on various occasions and had several times struck her; that he often cursed and abused her; that he failed to supply her and her children with sufficient necessaries; that he came home every night drunk; that he was very seldom at home, and was sometimes away for a week at a time; that at the time she left him there was almost nothing in the house to cook; that they had recently moved to the home in which they were living; that the cook-stove was broken in moving and had not been put up; and that she had recently left the defendant's home in Sylvania and moved to the house of her sister in Statesboro. On cross-examination, she denied that she had deserted the defendant, and said that he had deserted her. At first she denied ever having been drunk since her marriage, but afterward admitted that she had been very drunk on several occasions. She denied that she had cursed the defendant. The sister of the plaintiff testified, that the plaintiff was living with her; that she went to Sylvania to bring the plaintiff to Statesboro; that she found in the defendant's house for food only some cabbage, flour, and butter; that the stove was broken and not put up; that she and her brother had frequently sent to the plaintiff presents of

money and clothing; that the children were insufficiently clothed; that she had endeavored to prevent them from writing to the defendant, but they had done so without her knowledge.

The defendant testified, admitting that he sometimes drank whiskey and beer, but denied having been drunk; and further: that the plaintiff had often been drunk, and had voluntarily and without cause deserted him; that she was quarrelsome and abusive, and would frequently strike him, on one occasion having struck him with a dish with such force as to cut his arm to the bone; that she was very cruel to the children; that his means were limited, and he was entirely dependent upon his earnings; that he was a justice of the peace, deputy clerk of the superior court, and an abstractor, that for six months prior to the filing of the petition for alimony he had earned less than $35 per month, and could not earn more; that he had rented a house for the year at $10 per month, and since the plaintiff left him he has been forced to get his meals at a restaurant at a cost of 75 cents per day; that if the plaintiff and their children were with him, his earnings would be sufficient to keep them from want, but that he could not pay his necessary personal expenses and have a remainder left to pay the plaintiff alimony, such necessary personal expenses amounting to more than $30 per month. He introduced also the testimony of other witnesses. One of them testified, among other things, that he had been the solicitor of the city court of Sylvania, and that from October, 1913, to November, 1914, he had paid the defendant as justice of the peace, on insolvent costs which had accrued in the city court, $126.92, and a small amount as costs which had accrued in cases where the defendant had been fined and paid the costs.

*E. K. Overstreet,* for plaintiff in error.

LUMPKIN, J. (After stating the foregoing facts.) This court can not hold that the original order awarding temporary alimony was improvidently granted when it was passed. As to the judgment declaring the defendant to be guilty of contempt and ordering him to be imprisoned if he should fail to pay the amount of alimony past due, amounting to $80, within ten days, and refusing to make any modification of the former order, we feel constrained to hold that the court erred. The evidence on behalf of the defendant showed that he could not then comply with the order for the payment of alimony, and a change in his ability to do so, owing

to a decrease in earnings, and the fact that those who had previously made him small loans of money were unwilling or unable to do so. The plaintiff introduced no evidence, but left the case to stand upon that introduced by the defendant. While in cases of conflicting evidence the discretion of the trial court will not be readily interfered with, yet, under the evidence introduced by the defendant as to his pecuniary condition and inability at the time of the hearing to comply with the former order, with no countershowing or rebutting evidence, the court erred in requiring the payment, within ten days, of past-due installments of alimony, amounting to $80, or that in default thereof the defendant should be imprisoned, and in declining to make any modification in the requirement as to the payment of alimony or its amount. Should it appear later that the defendant's ability to pay temporary alimony has increased, the matter will still be within the discretionary control of the court. *Pinckard* v. *Pinckard*, 23 *Ga.* 286; *Wester* v. *Martin*, 115 *Ga.* 776 (42 S. E. 81); *Jennison* v. *Jennison*, 136 *Ga.* 202 (71 S. E. 244, 24 Ann. Cas. (1912C) 441).

*Judgment reversed. All the Justices concur.*